IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EQ–THE ENVIRONMENTAL QUALITY COMPANY, a Michigan corporation, <br><br>    Plaintiff and <br>    Counter Defendant, <br><br>v. <br><br>FMRI, INC., a Delaware corporation, and FANSTEEL, INC., a Delaware corporation, <br><br>    Defendants and <br>    Counter Plaintiffs and <br>    Third-Party Plaintiffs, <br><br>v. <br><br>GREG P. MARSHALL, an individual, <br><br>    Third-Party Defendant. | Case No. CIV-12-496-RAW |

### ORDER

On December 11, 2012, EQ–The Environmental Quality Company (hereinafter "EQ") brought this action against FMRI, Inc. (hereinafter "FMRI") and Fansteel, Inc. (hereinafter "Fansteel"). On January 3, 2013, FMRI and Fansteel filed a Counterclaim against EQ and a Third Party Complaint against Greg P. Marshall.

Before the court are the motion to dismiss the Counterclaim filed by EQ [Docket No. 35] and the motion for default judgment against Greg Marshall by FMRI and Fansteel [Docket No. 46]. The motion to dismiss is hereby denied in part and granted in part. The motion for default judgment is denied at this time. Greg Marshall has until June 7, 2013 to answer or otherwise

plead. If he does not, the court will enter default judgment against him on the issue of liability on Counts I and III. The court reserves judgment on Count II until the conspiracy claim against EQ has been decided.

**MOTION TO DISMISS**

To survive the motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff must nudge its "claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557) (internal quotations omitted). In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." Id. at 679.

> The Tenth Circuit has concluded:
>
> the Twombly / Iqbal standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do. **In other words, Rule 8(a)(2) still lives. Under Rule 8, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.**

Burnett v. Mortgage Elec. Registration Sys., Inc. 706 F.3d 1231, 1236 (10th Cir. 2013) (quoting Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012) (emphasis added)).

Ultimately, motions pursuant to Rule 12(b)(6) are still disfavored.

"Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. (quoting Iqbal, 556 U.S. at 679). "This contextual approach means comparing the pleading with the elements of the cause(s) of action." Id. "'[W]hile Plaintiff is not required to set forth a prima facie case for each element, [he] is required to set forth plausible claims' animating the elements of [his] action." Id. (quoting Khalik, 671 F.3d at 1193).

The court notes that Rule 15 also still lives.  Rule 15 authorizes a plaintiff to amend with the court's leave, which the court freely gives when justice so requires.  When a complaint fails to adequately notice a defendant of the "what the claim is and the grounds upon which it rests" or otherwise does not meet the Twombly / Iqbal requirements, justice generally requires the court to give the plaintiff leave to amend at least once.

**CLAIMS AND FACTUAL ALLEGATIONS IN THE COUNTERCLAIM**

FMRI and Fansteel, the Counter Plaintiffs, listed the following causes of action in their Counterclaim: (I) common law fraud and willful deceit, (II) conspiracy to commit common law fraud, (III) negligence, and (IV) abuse of process.  The court will compare the elements of these causes of action with the factual allegations in the Counterclaim.

For purposes of the motion to dismiss, the court accepts as true all of the well-pleaded factual allegations in the Counterclaim and construes those facts in the light most favorable to the Counter Plaintiffs.  See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d 1278, 1284 (10th Cir. 2008).  Of course, the court does not accept as true conclusory statements or legal conclusions.[1]

---

[1] "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of

Counter Plaintiffs allege the following pertinent facts in their Counterclaim. FMRI is an entity created by Fansteel to engage in the decommissioning of a metal processing and manufacturing plant in Muskogee, Oklahoma. EQ executed a contract for services on August 12, 2010 that purports to be between EQ and FMRI. EQ executed the contract with Greg Marshall, who was holding himself out to be the President of FMRI. Greg Marshall was never the President of FMRI. Additionally, FMRI never gave Greg Marshall authority to contract on its behalf.

In fact, Counter Plaintiffs allege, EQ had previously introduced Greg Marshall to FMRI and Fansteel as a potential buyer of FMRI stock. The sale of FMRI stock to Greg Marshall, however, was never completed. EQ maintained an ongoing relationship with Greg Marshall and knew or reasonably should have known that Greg Marshall was not the President of FMRI and had no authority to contract on behalf of FMRI.[2]

Counter Plaintiffs allege EQ prepared invoices for work it claimed it had performed under the fraudulent contract in an effort to deceive and defraud FMRI and Fansteel. EQ never submitted these invoices directly to FMRI, but instead sent them to Greg Marshall, who submitted them to FMRI. EQ later brought this lawsuit based on the alleged contract between EQ and FMRI. At no time from August 12, 2010 to the date of the filing of this lawsuit did EQ

---

action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

[2]By Counter Plaintiffs' allegations, Greg Marshall seemed to be more of an agent or friend of EQ than of FMRI. Upon advice from Greg Marshall, FMRI replaced its Radiation Safety Officer with Billy Thomas, an employee of Integrated Environmental Management, Inc., a subcontractor of EQ. FMRI paid three invoices *submitted to it by Greg Marshall rather than by EQ* for Billy Thomas' work in the preparation of an incomplete report for the United States Nuclear Regulatory Commission. FMRI also later paid another $125,000 to EQ for that incomplete report.

or Greg Marshall inform FMRI of the existence of the alleged contract. EQ and Greg Marshall mutually benefitted economically from the alleged contract to the detriment of FMRI and Fansteel.

Count I – Common Law Fraud and Willful Deceit

Counter Plaintiffs' first claim is common law fraud[3] and willful deceit[4]. Ultimately, to prevail on a claim of fraud or deceit in Oklahoma, a plaintiff must show that the defendant made a material misrepresentation, that the defendant knew the representation was false or recklessly made it without knowledge of the truth, that the defendant made it with the intention that plaintiff would act upon it, that plaintiff did so act and that plaintiff suffered injury. Hitch Enterprises, Inc. v. Cimarex Energy Co., 859 F.Supp.2d 1249, 1259 (W.D. Okla. 2012); Derakhshan v. Tizzio, 270 P.3d 215, 217 (Okla. App. 2011).

Counter Plaintiffs have pled that EQ entered a contract with Greg Marshall that was purportedly between EQ and FMRI even though EQ knew or should have known that Greg Marshall was not the President of or authorized to contract on behalf of FMRI. Counter Plaintiffs have further pled that EQ sent invoices to Greg Marshall to then be forwarded to FMRI

---

[3]In Oklahoma, actual fraud is defined as either: (1) the suggestion, as a fact, of that which is true, by one who does not believe it to be true, (2) the positive assertion in a manner not warranted by the information of the person making it, of that which is true, though he believe it to be true, (3) the suppression of that which is true, by one having knowledge or belief of the fact, (4) a promise made without any intention of performing it, or (5) any other act fitted to deceive. 15 OKLA. STAT. § 58; Lundgaard v. Baxter, 849 P.2d 421, 430 (Okla. App. 1992).

[4]In Oklahoma, the tort of deceit is defined as either: (1) the suggestion, as a fact, of that which is not true by one who does not believe it to be true, (2) the assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true, (3) the suppression of a fact by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact, or (4) a promise, made without any intention of performing. 76 OKLA. STAT. § 3; Lundgaard v. Baxter, 849 P.2d 421, 430 (Okla. App. 1992).

for work that was purportedly completed under the alleged contract. FMRI paid some invoices, though it was unaware of the alleged contract. FMRI refused to pay other invoices, after which EQ brought this lawsuit against Counter Plaintiffs.

EQ argues that since FMRI was unaware of the contract, it cannot plead that it relied thereon. FMRI did, however, act thereon, even if it was unaware it was doing so when it paid invoices for work EQ alleges was done under the contract. FMRI has also pled damages, including invoices paid for shoddy work and damages brought about by this action. Counter Plaintiffs have set forth a plausible claim for relief. EQ's motion, therefore, is denied as to Count I.

Count II – Conspiracy to Commit Common Law Fraud

Counter Plaintiffs next allege that EQ conspired with Greg Marshall to defraud FMRI and Fansteel. "A civil conspiracy consists of a combination of two or more persons to do an unlawful act, or to do a lawful act by unlawful means." Brock v. Thompson, 948 P.2d 279, 294 (Okla. 1997). As EQ argues, a civil conspiracy claim "is not an independent, actionable claim; there must be an underlying tortious act." Transportation Alliance Bank, Inc. v. Arrow Trucking Co., No. 10-CV-16-GKF-PJC, 2011 WL 221863, at *6 (N.D. Okla. January 21, 2011).

EQ argues that this claim fails because Counter Plaintiffs have failed to state a claim for the fraud underlying the conspiracy. As the court ruled above, Counter Plaintiffs have stated such a claim. EQ's motion is denied as to Count II.

Count III – Negligence

Counter Plaintiffs' third count is for negligence. "The elements of the tort of negligence are 1) a duty of care owed by defendant to plaintiff, 2) defendant's breach of that duty, and 3)

injury to plaintiff caused by defendant's breach of that duty." Lowery v. Echostar Satellite Corp., 160 P.3d 959, 964 (Okla. 2007). In this same case cited by EQ, the Oklahoma Supreme Court states: "We have long recognized that without regard to the relationship of the parties, a person owes a duty of care to another person whenever the circumstances place the one person in a position towards the other person such that an ordinary prudent person would recognize that if he or she did not act with ordinary care and skill in regard to the circumstances, he or she may cause danger of injury to the other person." Id. Foreseeability is key to the question of the existence of a duty of care. Id.

Counter Plaintiffs have alleged the EQ introduced Greg Marshall to FMRI as a *possible* purchaser of FMRI stock. From then on, EQ ceased direct communication with FMRI, at least with regard to the alleged contract, and communicated only with Greg Marshall, sending invoices to him. EQ was definitely in a position to know that Greg Marshall may not have had authority to contract on behalf of FMRI and that FMRI could suffer injury if EQ entered the contract without ensuring that Greg Marshall, in fact, had such authority. The motion to dismiss is denied as to Count III.

Count IV – Abuse of Process

Counter Plaintiffs' fourth count is abuse of process. "The elements of an action for abuse of process are: (1) issuance of process, (2) an ulterior purpose and (3) a wilful act in the use of process not proper in the regular conduct of the proceeding." Skycam, Inc. v. Bennett, No. 09-CV-294-GKF-FHM, 2010 WL 5376282 at *5 (N.D. Okla. December 22, 2010). Here, as in Skycam, the only act alleged is the filing of this lawsuit. Accordingly, the claim fails. Id. As in Skycam, if Counter Plaintiffs are successful in this suit, they could later bring an action against

EQ for malicious prosecution, but at this time an essential element, i.e. successful termination of this proceeding, would be missing. Accordingly, the motion to dismiss is granted as to Count IV.

**MOTION FOR DEFAULT JUDGMENT**

FMRI and Fansteel, also Third Party Plaintiffs, have filed a motion for default judgment against Greg Marshall. Third Party Plaintiffs brought the following claims against Greg Marshall: (I) actual and constructive common law fraud and deceit, (II) conspiracy to commit common law fraud, and (III) negligent misrepresentation and omission. Third Party Plaintiffs further seek punitive damages and attorney fees.

Greg Marshall was served on January 3, 2013. On January 18, 2013, Greg Marshall filed a motion for extension of time to answer. The court granted his motion, allowing Mr. Marshall to answer or otherwise plead no later than February 25, 2013. On January 26, 2013, the court also directed Mr. Marshall to file his initial disclosures pursuant to Rule 26 no later than February 25, 2013. Mr. Marshall never filed his answer, any other pleading or his initial disclosures.

On March 7, 2013, Third Party Plaintiffs filed a motion for entry of default by the Clerk against Mr. Marshall. The Clerk's Entry of Default was entered on March 8, 2013. On March 11, 2013, Third Party Plaintiffs asked the court to grant default judgment pursuant to Rule 55(b)(2) against Mr. Marshall as to the issue of liability and to reserve the amount of damages until the outcome of the underlying action.

Despite EQ's argument against default judgment, Mr. Marshall could be found liable as to Counts I and III without regard to EQ. The court nevertheless recognizes that with regard to Count II, inconsistent judgments could occur if the court were to enter default judgment against

Mr. Marshall now and EQ were to later prevail on the conspiracy claim against it.

Moreover, as the court favors resolving cases on their merits and disfavors default judgments, it will allow Mr. Marshall another opportunity to respond. Mr. Marshall shall answer or otherwise plead no later than **June 7, 2013**. If he does not, the court will enter default judgment as to the issue of liability on Counts I and III. The court reserves judgment as to Count II until the conspiracy claim against EQ has been decided. The court will also reserve for a later hearing the issue of damages, including punitive damages, and attorney fees.

## CONCLUSION

For the reasons stated above, the motion to dismiss the counterclaim [Docket No. 35] is hereby DENIED as Counts I - III and GRANTED as to Count IV. The motion for default judgment [Docket No. 46] is hereby DENIED at this time. Greg Marshall shall answer or otherwise plead no later than **June 7, 2013**. If he fails to do so, the court will enter default judgment against him as to the issue of liability on Counts I and III of the Third Party Complaint. The court reserves judgment as to Count II until the conspiracy claim against EQ has been decided. The court will also reserve for a later hearing the issue of damages, including punitive damages, and attorney fees.

IT IS SO ORDERED this 23rd day of May, 2013.

**Dated this 23rd day of May, 2013.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma