# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| EQ – THE ENVIRONMENTAL QUALITY COMPANY, a Michigan Corporation, ) ) ) ) **Plaintiff and** ) **Counter Defendant,** ) ) v. ) ) FMRI, INC., a Delaware corporation, ) and FANSTEEL, INC., a Delaware ) corporation, ) ) **Defendants and** ) **Counter Plaintiffs and** ) **Third Party Plaintiffs.** ) ) v. ) ) GREG P. MARSHALL, an individual, ) ) **Third-Party Defendant.**) | Case No. CIV-12-496-RAW |

## REPORT AND RECOMMENDATION

Third Party Plaintiffs FMRI, Inc., and Fansteel, Inc., obtained a default judgment against Third-Party Defendant Greg P. Marshall on July 13, 2013. The Court reserved the issue of damages pending resolution of the underlying litigation, which reached settlement on June 25, 2013. The Court then referred the issue of damages to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A). As set forth below, the undersigned finds that Third Party Plaintiffs FMRI, Inc. and Fansteel, Inc. are entitled to the following damages.

## A. Factual Background

Plaintiff EQ – The Environmental Company (EQ) filed this lawsuit alleging that it entered into a contract with FMRI to perform work at a processing and manufacturing plant in Muskogee, Oklahoma, related to decommissioning the plant under the U.S. Nuclear Regulatory Commission. FMRI is a company that works to decommission these plants, including the Muskogee facility that was formerly owned by Fansteel and is currently owned by FMRI while Fansteel still provides the funding to FMRI for the remediation work. Through these dealings, FMRI and Fansteel came into contact with Mr. Greg Marshall, who through his company Green Lantern Acquisition 1, unsuccessfully attempted a stock sale to purchase FMRI from Fansteel. Mr. Marshall's title in relation to FMRI and Fansteel was "consultant," but during these dealings he took it upon himself to enter into contracts with EQ on behalf of FMRI while representing himself as President of FMRI to EQ, *see* Damages Hr'g, Third Party Plaintiffs Exs. 1, 15, 20, 23, despite the fact that he was never a designated corporate representative of Fansteel or FMRI. Fansteel and FMRI did not become aware of the contract that obligated FMRI until EQ filed the present case and the contracts were produced in discovery.

## B. Procedural History

Plaintiff EQ filed the present case against FMRI and Fansteel on December 11, 2012. On January 3, 2013, FMRI and Fansteel filed their Third Party Complaint against Mr. Marshall. Mr. Marshall requested and was granted an extension of time to file his answer on or before February 25, 2013, but he failed to do so, and the Clerk's Office

granted FMRI and Fansteel an entry of default against Mr. Marshall on March 7, 2013. FMRI and Fansteel then filed a Motion for Default Judgment against Mr. Marshall which the Court denied and gave Mr. Marshall until June 7, 2013 to answer or otherwise plead. Mr. Marshall once again wholly failed to answer or otherwise plead, and FMRI and Fansteel renewed their motion for default judgment as to Counts I and III (reserving the issue of Count II, a conspiracy claim). The Court then entered Default Judgment against Mr. Marshall as to Count I (actual and constructive common law fraud) and Count III (negligent misrepresentation and omission). EQ, along with FMRI and Fansteel, later notified the Court that they reached a settlement agreement and additionally filed a Notice of Dismissal as to Count II. The undersigned Magistrate Judge held a settlement conference that was attended by representatives from FMRI and Fansteel, as well as Mr. Marshall, but the parties failed to reach a settlement on the remaining two Counts against Mr. Marshall. FMRI and Fansteel then filed a Status Report on the issue of damages incurred by Mr. Marshall, as directed by the Court. On September 24, 2013, the undersigned Magistrate Judge held a hearing on damages. Following the hearing, Mr. Marshall filed a Motion for Leave to Set Aside the Default Judgment and Secure Counsel for Defendant [Docket No. 83], which the District Court denied for failure to show good cause [Docket No. 85].

### C. Analysis

FMRI and Fansteel have requested that the Court assess actual and punitive damages against Mr. Marshall, as well as attorney's fees. Under Fed R. Civ. P. 54(c), "A default judgment must not differ in kind from, or exceed in amount, what is demanded in

the pleadings." In other words, FMRI and Fansteel may not recover more than they requested in their Third Party Complaint against Mr. Marshall because Rule 54(c) is "a ceiling rather than a floor on damages." *Smith v. Cummings*, 445 F.3d 1254, 1259 (10th Cir. 2006). Here, FMRI and Fansteel stated in their Third Party Complaint that they sought damages in excess of $826,024.38, as well as punitive damages [Docket No. 21, p. 2], but have requested in their Status Report an amount below that requested in their Third Party Complaint. The undersigned Magistrate Judge therefore recommends the following award of actual and punitives damages. *Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

Fansteel and FMRI have requested actual damages of $35,963.54 related to time and expenses of officers and employees of Fansteel and FMRI, as well as the actual damages in the amount of the Settlement Payment made by FMRI and Fansteel to EQ.[1] Fansteel and FMRI have provided a detailed accounting for the requested amounts related to the individuals' time, travel, and expenses, as well as the relevant Settlement Agreeeement. *See* Damages Hr'g, Third Party Plaintiffs Exs. 6, 28-30, 38. At the hearing, Mr. Marshall was given an opportunity to cross-examine FMRI President Bob Compernolle and Fansteel President and CEO Brian Cassady related to the issue of

---

[1] On July 25, 2013, EQ, FMRI, and Fansteel executed a General Mutual Release and Settlement Agreement, subject to a confidentiality clause. The settlement amount has been provided *in camera* for the undersigned Magistrate Judge's review.

-4-

damages, but Mr. Marshall did not challenge the damages requested and instead attempted to challenge the Default Judgment itself. The undersigned Magistrate Judge instructed Mr. Marshall that he should file any request to reconsider the Default Judgment with the District Judge following the hearing; Mr. Marshall did so and the motion was denied. The undersigned Magistrate thus recommends awarding the requested actual damages in full because these damages amounts are not contested and are neither indefinite nor uncertain. *See United States v. Craighead*, 176 Fed. Appx. 922, 925 (10th Cir. 2006) ("The government, however, is correct in its concise and well-reasoned brief, where it notes that the claim for damages in this case was not indefinite or uncertain. Instead, once the facts regarding Mr. Craighead's liability on the notes were taken as true, all the court was required to do was calculate the amounts owed on the promissory notes and the interest."). *See also* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2688 (3rd ed. 1998) ("Once the court determines that a judgment by default should be entered, it will determine the amount and character of the recovery that should be awarded. If defendant does not contest the amount prayed for in the complaint and the claim is for a sum certain or a sum that can be made certain by computation, the judgment generally will be entered for that amount without any further hearing.").

Fansteel and FMRI have also requested attorney's fees and costs in the amount of $238,284.84, and this fee request was addressed at the hearing. *See* Fed. R. Civ. P. 55(b). "It remains for the district court to determine what fee is 'reasonable[,]'" *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), and "[i]t is essential that the judge provide a

reasonably specific explanation for all aspects of a fee determination, including any award of any enhancement." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 558 (2010). Further, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

"The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Case v. Unified School Dist. No. 233, Johnson County, Kan.*, 157 F.3d 1243, 1256 (10th Cir. 1998) [quotation omitted]. In making such a review, the undersigned Magistrate Judge may refer to affidavits, briefs, and depositions, as well as his own knowledge and experience. *See Jones v. Eagle-North Hills Shopping Centre, L.P.*, 478 F. Supp. 2d 1321, 1326 (E.D. Okla. 2007), *citing National Association of Concerned Veterans v. Secretary of Defense*, 675 F.2d 1319, 1325 (C.A.D.C. 1982) *and Association for Disabled Americans, Inc. v. Integra Resort Management, Inc.*, 385 F. Supp. 2d 1272, 1287 (M.D. Fla. 2005). *Cf. Arnold Oil Properties, L.L.C. v. Schlumberger Technology Corporation*, 2011 WL 3652560, at *1 n.1 (W.D. Okla. Aug. 19, 2011). Additionally, "there is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 559 U.S. at 554. *See also Two Old Hippies, LLC v. Catch the Bus, LLC*, 277 F.R.D. 448, 464-465 (D. N.M. 2011).

FMRI and Fansteel produced billing records indicating that they have incurred $238,284.84 in attorneys' fees. This amount includes 165.5 hours of time for Mr. Gregory Nellis, 732.4 hours of time for Ms. Carol Allen, and 9.8 hours of time for Ms. Marthanda Beckworth, all billed at $220.00 per hour, as well as expenses in the amount of $23,347.34. Additionally, this amount includes 8.2 hours of time for Ms. Jennifer Ary-Hogue, and 63.6 hours of time for Mr. Jason McVicker, who both appear to be associates billing at an hourly rate of $170 per hour. Finally, this amount also includes 2.6 hours of time for Ms. Leeann Eddingfield, 19.2 hours of time for Ms. Kristi Wilson, and 2.5 hours of time for Ms. Cachet Winterroth, who all appear to be paralegals billing at an hourly rate of $125 per hour. Mr. Marshall has not disputed the reasonableness of the fees and expenses request by FMRI and Fansteel, again asserting that he should not be held responsible at all. FMRI and Fansteel have not provided evidence of local hourly rates for themselves, nor for the associates and paralegals that also worked on this case. After reviewing the submitted billing records, the requested attorneys' fees requested seem to be rather high in light of the length of the litigation in this case, but the undersigned Magistrate Judge nevertheless finds nothing in them to be patently unreasonable in light of his knowledge of the hourly rates in this legal community as well as his knowledge of the attorneys who performed the work in this case. The undersigned Magistrate Judge thus recommends awarding the entire amount of attorney's fees and expenses requested. *Cf. Chatman v. Buller*, 2013 WL 5729603, at *2 (E.D. Okla. Oct. 22, 2013) (slip op.) ("The survey indicates that lawyers with attorneys with 10-12 years of experience charge hourly rate ranging between $160.00 and $330.00 per hour, with

most respondents charging $250 per hour. The survey also shows that attorneys with 7-9 years of experience charge hourly rates between $130 and $295 per hour, with most respondents charging $225 per hour. Further, the affidavits from local attorneys state that Mr. Terrill and Mr. Bryan are entitled to $250 and $290 per hour, respectively.").

Last, FMRI and Fansteel have requested punitive damages in the amount of $474,248.38. "An award of punitive damages is not a matter of right but is within the discretion of the trier of the facts and will depend upon the degree of wanton and willful conduct of the defendant." *Flaks v. Koegel*, 504 F.2d 702, 707 (2nd Cir. 1974) [internal citations omitted]. Additionally, it is not enough to simply request a specific amount of damages; the plaintiff must establish that the specific amount is reasonable. *See Applied Capital, Inc. v. Gibson*, 2007 WL 5689322, at *9 (D. N.M. Sept. 27, 2007) ("Regarding punitive damages, a plaintiff cannot satisfy the certainty requirement simply by requesting a specific amount. [The plaintiff] must also establish that the amount requested is reasonable under the circumstances."), *quoting Beck v. Atlantic Contracting Co.*, 157 F.R.D. 61, 65 (D. Kan. 1994). In this case, the undersigned Magistrate Judge notes that the amount of damages requested is equal to the sum of the request for actual compensatory damages and attorneys' fees and expenses. Here, such an award is appropriate. Mr. Marshall's actions were particularly egregious in demonstrating willful and wanton conduct because he represented himself to be an officer of a company for which he held no such position, contractually obligated FMRI and Fansteel to expenses he was not qualified to authorize, and continues to insist he caused no harm to FMRI or Fansteel. Additionally, Mr. Marshall made no objection to the *amount* of punitive

damages requested. The undersigned Magistrate Judge thus recommends awarding the requested punitive damages in full.

### D. Conclusion

In summary, the undersigned Magistrate Judge PROPOSES the findings set forth above and accordingly RECOMMENDS awarding damages requested in the Status Report [Docket No. 71] as follows: actual damages in the amount of $35,963.54 plus the amount of the Settlement Payment, attorney's fees in the amount of $238,284.84, and punitive damages in the amount of $474,248.38. Any objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

IT IS SO ORDERED this 11th day of March, 2014.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma